Ronni J. KOTWICA and Roland Kotwica, Husband and Wife, Plaintiffs-Appellees,

v.

CITY OF TUCSON, Daul Valenzuela, Germaine Caine, James E. Ronstadt, and Charles Davis, Defendants-Appellants.

No. 85–2111.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1986.

Decided Oct. 9, 1986.

Ronald J. Stolkin, Elaine C. Hardin, Whitehall, Stolkin, Karp, West, Weiss, & Berger, Tucson, Ariz., for plaintiffs-appellees.

Tobin Rosen, Asst. City Atty., Tucson, Ariz., for defendants-appellants.

Before KENNEDY, FARRIS and NOONAN, Circuit Judges.

KENNEDY, Circuit Judge:

We address the question whether the first amendment provides absolute protection to a government employee who uses an official interview to contradict agency policy, in violation of express directions from a superior. The district court found the speech protected. We reverse.

Ronni J. Kotwica challenges a one day suspension from her duties as a recreation supervisor in the Parks and Recreation Department for the City of Tucson. Kotwica was directed by the department to study the feasibility of adding a competitive gymnastics team to the city's recreation program. In June 1983, Kotwica's immediate supervisor informed her that the proposal had been put on hold and would not be implemented for the summer. The supervisor did ask Kotwica to continue consideration of the proposal for adoption at some later time.

There was a noncompetitive gymnastics program in operation, and Kotwica sent a letter to parents of the children enrolled in it. The letter mentioned the "soon to be formed team," i.e. the competitive team then under study. Her supervisors admonished Kotwica to make no further reference to a competitive team until the department made a final decision on the matter.

In the summer of 1983, the department sponsored a gymnastics exhibition at a local high school. One hundred and forty-five gymnasts participated and seven hundred others were spectators. At the exhibition a photographer from the local newspaper, the *Arizona Daily Star*, took pictures and requested an interview with Kotwica. Kotwica obtained permission from her department supervisor to speak with the reporter. There is some dispute over precisely what the supervisor told Kotwica. However, the parties agreed for summary judgment purposes that Kotwica was instructed not to discuss the development of a competitive gymnastics team in Tucson because the outline of such a program had yet to be decided and its direction was a sensitive matter.

Kotwica spoke to the reporter at a city facility while she was working. The article that appeared in the newspaper quoted her in part as follows:

A major concern for Kotwica is a goal for her students.

"You work and you work, but what for?" she said. *"We'd like to get to the point where we compete against other schools and clubs.*

*"In Illinois, different city teams are co-sponsored by parks and recreation departments and boosters, and they compete against each other."*

Kotwica said a similar situation is at least a year away in Tucson.

*"My ultimate goal is to get a first-class team going* and be working toward a gym. Right now we've got levels III and IV. *We're looking at two years down the road as far as having top-level competitors in Classes III and IV.*

*"It can be a very self-satisfying program, not only for me but for all the parents* that spend the time and money and are involved in this endeavor, also."

(Emphasis added).

As a result of the article, Kotwica was suspended from her job for one day without pay for disobeying the directions of her

supervisor, the city claiming that the interview was a repeated incident of insubordination. After serving her suspension, Kotwica filed suit against the city of Tucson and her supervisors, claiming violations of 42 U.S.C. § 1983 and the first and fourteenth amendments. The district court granted summary judgment in her favor.

Analytic imprecisions underlie the arguments of both the city and its suspended employee. At oral argument the city's wooden insistence was that Kotwica's statements were not speech at all, but were instead within some amorphous metaphysical category beyond the ambit of the first amendment. The law does not rest on propositions so artificial. Comments made to a newspaper reporter and intended for publication are speech, pure and simple. The question is whether the speech has absolute protection when the speaker uses an official interview to misstate the official policy of the government employer he or she purports to represent.

The employee's argument is fallacious as well. Egocentric in design, Kotwica's contention is that her speech alone, not the official policy of the agency, has value for the public. That is not the case. The government's stake in the accurate announcement of its own policy is more than legitimate, it is vital to constitutional rule. Whether wise or foolish, the policy of the government must be known and understood if the public is to hold its authors to account. The personal views of individual employees do not take necessary precedence over this vital speech interest of the government itself when the employee uses an official interview to misrepresent government policy.

The Supreme Court's decisions in *Connick v. Myers*, 461 U.S. 138, 144–46, 103 S.Ct. 1684, 1688–90, 75 L.Ed.2d 708 (1983), and *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), instruct us that public employees retain first amendment rights to comment on matters of public concern but that there is a balance between that privilege and the state's interest in a responsible and efficient governmental system. *See also Nicholson v. Board of Education*, 682 F.2d 858, 865 (9th Cir.1982). The subjects on which the employee spoke were matters of public concern, and as a private citizen, the employee could comment whether or not her opinion would sit well with the employer. *See Anderson v. Central Point School District No. 6*, 746 F.2d 505, 507 (9th Cir.1984) (per curiam). The problem, then, is not that the comments were an indirect or implied criticism of the employer or its policy, for even direct and explicit criticism by an employee has constitutional protection when spoken in the appropriate forum. *Pickering*, 391 U.S. at 570, 88 S.Ct. at 1735.

The point here is that the employee appropriated an official interview for her own purposes and misrepresented the department's position in material respects, contrary to its orders. Neither *Pickering* nor its progeny contemplates that a public employee has the unfettered right to speak as the employee pleases, while purporting to explain official policy. The government's interest is in direct proportion to the potential for interference with its ability to function, and in judging the level of interference, the government has broad discretion. *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692. "The *Pickering* balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Id.* at 150, 103 S.Ct. at 1692. Interference with the government's ability to function in a responsible way may result from speech that takes the form of official misrepresentation, and in consequence the government has an important interest in preventing such distortion.

Here, Kotwica was interviewed not because of her stature but because she represented the department. Her own actions

so confirm. She sought authorization from the department and spoke on its time. The Constitution does not prevent the government from disciplining an employee when he or she uses an official interview in a manner inconsistent with the employer's directions and misstates the employer's policy. Kotwica could be disciplined not only because she was insubordinate but also because her speech disserved the first amendment interests of others, though she would arrogate its protection for her exclusive benefit.

The government's interest in the accurate announcement of its policy is sufficient to sustain the discipline here imposed. We find no first amendment protection for the employee's speech in all the circumstances of the case.

REVERSED.