37 F.3d 1505
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Tom FENDER, Plaintiff-Appellant,
v.
CITY OF OREGON CITY, a municipal corporation; David Spear,
individually and in his official capacity as Mayor
of Oregon City. Defendants-Appellees.
 Nos. 93-35060, 93-35100.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 13, 1994.
Decided Oct. 3, 1994.
As Amended; Request for Publication Denied Nov. 16, 1994.
 
 Before: ALDISERT,* NORRIS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In this action by former city manager Tom Fender against Oregon City, Oregon and former Mayor David Spear for retaliatory constructive discharge in violation of his First Amendment right to free speech and for defamation, we must decide whether the district court erred in concluding that Fender's speech was not constitutionally protected and in granting the motion by the City and Spear for judgment N.O.V. on the defamation cause of action. Because we conclude that the district court did not err in determining that Fender's speech was not protected or that there was no support for the jury finding that Spear made the allegedly defamatory statement with "actual malice," we will affirm.
 
 
 3
 Jurisdiction was proper in the trial court based on 28 U.S.C. Secs. 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. Appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.
 
 
 4
 Whether Fender's speech is protected by the First Amendment is a question of constitutional law we review de novo. Hyland v. Wonder, 972 F.2d 1127, 1134 (9th Cir.1992), cert. denied, 113 S.Ct. 2337 (1993). We review a grant of judgment N.O.V. de novo. McGhee v. Arabian Oil Co., 871 F.2d 1412, 1416 (9th Cir.1989). We affirm judgments N.O.V. if the evidence and inferences drawn therefrom can support only one reasonable conclusion--that the moving party is entitled to judgment notwithstanding the adverse verdict. Id. In defamation cases involving public figures, we must make an independent examination of the record and make an independent constitutional judgment on the facts to determine if the defendant had "actual malice." Newton v. National Broadcasting Co., Inc., 930 F.2d 662, 669-72 (9th Cir.1990).
 
 I.
 
 5
 Tom Fender was hired in August 1987 by Oregon City, Oregon as city manager pursuant to a written at-will employment contract. Either party could terminate the contract without cause upon 120 days notice. During evaluations in 1989, members of the City commission expressed dissatisfaction with Fender's performance in several areas, including his failure to coordinate the budgeting process. Tempers were running so high that one commissioner resigned after an unsuccessful drive to oust Fender. In December 1989, Mayor Spear and three commissioners shared their evaluations in 28 areas with Fender, which included 12 ratings of "unacceptable," 20 ratings of "poor," 55 ratings of "acceptable," 18 ratings of "good" and 5 ratings of "excellent." Mayor Spear gave Fender a list of areas in which Fender needed to improve and asked Fender to prepare an action plan to address the issues.
 
 
 6
 In January 1990, Fender was interviewed by newspaper reporters regarding the City's financial state. Fender stated to them that he was recommending certain spending cuts, including a plan to eliminate elevator operator positions, even though the commission had not met to discuss the proposal told Fender in no uncertain terms that the elevator operators were necessary for security reasons. Fender's comments were published in the local newspapers on January 27, 1990.
 
 
 7
 On February 6, Commissioner Van Orman informed Mayor Spear that she intended to move to terminate Fender at the commission meeting the following evening. On the morning of February 7, Mayor Spear and Commissioner Fowler agreed to support Commissioner Van Orman's motion and informed Fender, who tendered a letter of resignation in response. The letter indicated that Fender wished to continue working for the 120-day period addressed in his employment contract. Fender's resignation was accepted by the commission at the February 7 meeting, effective immediately. The commission continued his benefits until June 30, 1990 and paid him a lump sum severance package.
 
 
 8
 In September 1990, Mayor Spear was interviewed by a news reporter regarding the performance of the new city manager and asked to compare the performance of Fender's successor with that of Fender. Spear was quoted as saying, "We're quite pleased with Charlie. He's been doing the job that we asked Tom Fender to do, but didn't do."
 
 
 9
 Fender filed a civil rights action under 42 U.S.C. Sec. 1983 against Spear and the City, alleging that they violated his First Amendment rights by constructively discharging him from his position as city manager in retaliation for statements he made to the press. Fender also alleged a state law claim of defamation by virtue of Mayor Spear's comment to the press.
 
 
 10
 The jury found the City liable for violating Fender's civil rights and awarded him $20,000 in damages. Mayor Spear was found not personally liable for the violation. The jury also found the City and Spear liable for defamation and awarded Fender $13,500, and further found that Spear was not privileged to make the alleged defamatory statement in his capacity as mayor.
 
 
 11
 Mayor Spear and the City filed a motion for judgment as a matter of law or, in the alternative, sought a new trial on the civil rights claim on the grounds that the trial court provided the jury with an incorrect definition of constructive discharge and improperly refused to provide an instruction regarding immunity from municipal liability.
 
 
 12
 On the civil rights claim, the district court concluded that the jury did not err in finding a constructive discharge and conditionally denied a motion by Spear and the City for a new trial on the ground that the court erroneously defined constructive discharge to the jury. In addition, the court found that municipal liability was appropriate because it was the threat of action by the Commission as a whole, and not Spear individually, that precipitated the constructive discharge. However, the court, having reserved the legal question of whether Fender's speech was protected speech, ultimately ruled in favor of Spear and the City on the civil rights claim because Fender's statement made in his capacity as city manager was not protected. Fender v. City of Oregon City, 811 F.Supp. 554, 559-561 (D.Or.1993).
 
 
 13
 On the defamation claim, the district court entered judgment N.O.V. in favor of Mayor Spear and the City, concluding that Fender failed to prove actual malice as a matter of law. Moreover, because Spear's statement was made in the course of his occupation and related to his duties as mayor, he was absolutely privileged to make the statement. Id. at 556-558.
 
 
 14
 On appeal, Fender argues that the district court erred in ruling in favor of Spear and the City on his civil rights claim because he was constructively discharged for speech that was protected under the First Amendment, and that it erred in granting Spear and the City's motion for judgment N.O.V. on his defamation claim because Spear's statement to the press was made with actual malice and because he was not shielded by absolute immunity.
 
 II.
 
 15
 Fender asserts that he was constructively discharged in retaliation for constitutionally protected speech. Whether the speech was protected was a question of law that the district court reserved during the trial. Although the jury found that Fender was constructively discharged in retaliation for his statements to the press regarding his budget recommendations, the court determined that those statements were not protected. Id. at 560. Spear and the City argue that the court erred in concluding that the jury finding of constructive discharge was supported by the record. Fender argues that the court erred in deciding that his speech was not protected.
 
 
 16
 The district court determined that, regardless of whether Fender was fired in retaliation for comments he made to the press, his speech was not protected. The court held that the First Amendment does not "protect an at-will high-level policy-making employee from being fired because of job-related opinions and ideas he expresses as part of his employment." Id. at 561.
 
 
 17
 The Supreme Court has held that speech by a public employee is entitled to constitutional protection if it reflects on the employee's views regarding a matter of public interest: "We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. 138, 147 (1983).
 
 
 18
 Although Spear and the City argue that Fender's speech did not involve matters of public concern, the district court concluded that the City's budgetary woes were a matter of public concern. Consequently, it proceeded to balance the interests of the public employee "in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" as required by Pickering v. Board of Education, 391 U.S. 563, 568 (1968).
 
 
 19
 Once a court has determined that given speech touches on matters of public concern, factors to be weighed in a Pickering balancing of interests include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. Rankin v. McPherson, 483 U.S. 378, 388 (1987); Hyland, 972 F.2d at 1139. The district court, after engaging in the required balancing test, concluded that Fender's speech was not protected under Pickering. Fender, 811 F.Supp. at 560. We agree.
 
 
 20
 We have held that a public employee's speech on matters of public importance may not be protected when such speech impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. Wheaton v. Webb-Petett, 931 F.2d 613, 618 (9th Cir.1994) (public employer's interest in smooth administration and successful implementation of a new welfare program outweighed dissenting employee's strong interest in free speech).
 
 
 21
 In this case, the City's interests were directly implicated by Fender's public announcement made in the course of his duties. Like the speaker in Wheaton, Fender openly pursued a goal contrary to those established by the governing body. See also Kotwica v. City of Tuscon, 801 F.2d 1182, 1184 (9th Cir.1986) (public recreation supervisor disciplined for disregarding directive not to discuss gymnastics team and sharing her views with local reporter was not protected by First Amendment, notwithstanding fact that matter was of public concern). Moreover, because Fender held a position of authority requiring the exercise of discretion, "the City had a greater interest in considering his speech when making an employment decision." Koch v. City of Hutchinson, 847 F.2d 1436, 1453 (10th Cir.1988) (fire marshal's report about cause of fire generated disharmony, disrupted necessary working relationships and impaired City's ability to perform necessary duties, tipping the Pickering balance in favor of the City so that demotion of the speaker did not offend the First Amendment).
 
 
 22
 Fender's announcement of spending cut recommendations appeared in local newspapers before the commission had met to address the proposals and after it cautioned Fender that the elevator operators were necessary for security reasons. Premature public disclosure impaired control by the commission, disrupted harmony among the City staff, detrimentally affected the close relationship between the city manager and the commission and interfered with the regular operation of the commission. Based on facts not in dispute, the district court did not err in finding that the balance tipped in favor the City as a matter of law.
 
 
 23
 Because we conclude that Fender's speech was not protected, we do not address the alternative argument by Spear and the City that the district court erred in denying their motion for judgment N.O.V. on the ground that Fender was not constructively discharged in retaliation for his speech.
 
 III.
 
 24
 When Mayor Spear was asked by a reporter to compare the performance of Fender's replacement, Charles Leeson, with that of Fender, the mayor replied: "We're quite pleased with Charlie. He's been doing the job that we asked Tom Fender to do, but didn't do." The jury found both Spear and the City liable for defamation. However, the district court entered judgment N.O.V. for Spear and the City on the grounds that there was no evidence that Mayor Spear's statement was made with actual malice and that he was privileged to make the statement. Fender, 811 F.Supp. at 558. We agree.
 
 
 25
 To succeed in a claim of defamation, a public official must show that the statement in question was made with "actual malice," defined as actual knowledge of its falsity or reckless disregard for its truth or falsity. New York Times Co. v. Sullivan, 376 U.S. 254 (1964). In order for a court to find reckless disregard, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731 (1968).
 
 
 26
 Opinion is not the proper subject of most defamation actions because it is not sufficiently factual and, therefore, not susceptible to being proved true or false. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 19-20 (1990). The district court found that the question of whether a public servant "did the job" is so subjective under most circumstances as to be incapable of factual analysis. However, because the commission conducted detailed performance evaluations of Fender, the court concluded that Mayor Spear's statement was sufficiently factual to support an action for defamation.
 
 
 27
 The court interpreted Spear's comment, "He's doing the job Tom Fender was supposed to do but didn't," to mean that the commissioners were dissatisfied with Fender's performance as city manager and preferred the way Leeson was handling the job. Fender, 811 F.Supp. at 558. It held that Spear's statement to the press was not false and, even if the statement could be construed as false, that Mayor Spear neither knew it was false nor recklessly disregarded its truth or falsity. The district court therefore concluded that there was no evidence in the record to support the jury's finding and entered judgment in favor Mayor Spear and the City. Id.
 
 
 28
 The record supports the district court's conclusion that Spear's statement that Fender did not perform his duties to the satisfaction of the commission either was true or made without actual malice. In 15 of 28 evaluation areas, not a single commissioner rated Fender "good," let alone excellent. Fender received grades of "poor" or "unacceptable" from at least two commissioners in 7 of the 28 areas evaluated. He received his worst marks in critical areas such as "sensitivity," "communications" and "honesty." Id. Although Fender obtained an overall evaluation of "acceptable," at the time Mayor Spear made his statement to the press, the commissioners had an opportunity to observe how Fender responded (or failed to respond) to their evaluation, and to the list of changes demanded by the commission. Further evidence of Fender's quality of performance is the fact that two commissioners who declined to fire him in November 1989, when the issue of his termination was contemplated, reversed course and sought to terminate him in February. Finally, Mayor Spear had the opportunity to observe the performance of the new city manager and compare his performance to that of Fender. Id.
 
 
 29
 We agree with the district court that there was no evidence to support a finding that Mayor Spear acted with actual malice when he made that single comment to a local reporter. Viewing the record in its entirety, the district court did not err in entering judgment N.O.V. in favor of Spear and the City.
 
 
 30
 Given this conclusion, we do not address the district court's additional conclusion that Spear was absolutely privileged to publish defamatory material in the course of performing his executive duties. See Schroeder v. Poage, 75 Or.App. 671, 675, rev. denied, 300 Or. 451 (1985); Shearer v. Lambert, 274 Or. 449 (1976).
 
 IV.
 
 31
 We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.
 
 
 32
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3