Georgia NUNEZ, Plaintiff–Appellee,

v.

Gary F. DAVIS, Defendant–Appellant.

No. 98–15137.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1998.

Decided March 12, 1999.

Peter M. Angulo, Rawlings, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, Nevada, for the defendant-appellant.

Kristina S. Holman, Las Vegas, Nevada, for the plaintiff-appellee.

Before: HARRY PREGERSON and MELVIN BRUNETTI, Circuit Judges, and ANN L. AIKEN,* District Judge.

PREGERSON, Circuit Judge:

Georgia Nunez is a former court administrator for the City of North Las Vegas Mu-

* The Honorable Ann L. Aiken, United States District Judge for the District of Oregon, sitting by designation.

nicipal Court. In 1993, a conflict developed between Nunez and her supervisor, Judge Gary Davis, who instructed Nunez to limit attendees at training seminars to those court employees who had worked in his reelection campaign. In protest, Nunez arranged for two court clerks who did not work in Davis's reelection campaign to attend a training seminar. Davis fired Nunez. She brought a 42 U.S.C. § 1983 action against Davis and against the City of North Las Vegas. Nunez's complaint charged that Davis, acting under color of state law, violated her First Amendment right to free speech when he fired her. The district court denied Davis's repeated motions for qualified immunity. The court granted the city's motion to dismiss on the ground that the municipal court system has Eleventh Amendment immunity. The case then proceeded to trial against Davis. The jury returned a verdict in Nunez's favor for $141,446.31.

Davis appeals from the judgment entered against him, the denial of a motion for summary judgment, and the denial of a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. He makes three arguments on appeal: (1) that Nunez's conduct in allowing the two court clerks to attend the training seminar is not constitutionally protected speech; (2) that the district court erred in denying Davis' motions for qualified immunity and in declining to submit the qualified immunity issue to the jury; and (3) that the district court erred in submitting the First Amendment "public concern" issue and the issue whether Nunez's conduct was speech to the jury. We address each of Davis's arguments in turn and affirm the district court for the following reasons.

## I.

### A. Nunez's conduct implicates the First Amendment.

To determine whether a public employee's supervisor violated an employee's First Amendment right to free speech, we must first determine whether speech was involved at all. Davis argues that Nunez's conduct in allowing the two court clerks to attend the training seminar was not speech because she merely refused to follow his orders and her conduct did not communicate any particular message. But we "have long recognized that [First Amendment] protection does not end at the spoken or written word." *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Non-verbal conduct implicates the First Amendment when it is intended to convey a "particularized message" and the likelihood is great that the message would be so understood. *Id.* Nunez testified that she intended by her conduct to convey a message to the court clerks and co-workers that Davis should not condition court clerks's benefits on working in his reelection campaign. The court clerks, as well as co-employees, testified that they understood that message. Thus, Nunez's expressive conduct (hereafter "symbolic speech" or "speech") possessed "sufficient communicative elements to bring the First Amendment into play." *Texas,* 491 U.S. at 404, 109 S.Ct. 2533.

Another critical inquiry is whether the public employee's speech addresses a matter of public concern. *See Allen v. Scribner,* 812 F.2d 426, 430 (9th Cir.1987).[1] Whether a public employee's speech or expressive conduct involves a matter of public concern depends upon "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A public employee's speech or expressive conduct deals with a matter of public concern when it "can be fairly considered as relating to a matter of political, social, or other concern to the community." *Voigt v. Savell,* 70 F.3d 1552, 1559

---

1. The determination whether speech involves a matter of public concern is a question of law. *See Connick v. Myers,* 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Although, as we discuss *infra,* the district court erred by submitting this question to the jury, the court implicitly held that Nunez's speech involved a matter of

public concern when, in denying Davis' motion for judgment as a matter of law, the court noted that "the government has no interest in the chilling of an employee's political expression." We review this question de novo. *Allen,* 812 F.2d at 430 n. 8.

(9th Cir.1995). Speech that deals with "complaints over internal office affairs" is not protected when it is not relevant to the public's evaluation of a governmental agency's performance. *Connick,* 461 U.S. at 149, 103 S.Ct. 1684.

The Supreme Court has held that speech similar to Nunez's inherently concerns the public interest. In *Connick,* the Court considered whether an internal office questionnaire distributed by an assistant district attorney who objected to being transferred constituted protected speech on a matter of public concern. The questionnaire concerned "office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns." *Id.* at 141, 103 S.Ct. 1684. The Court determined that all items in the questionnaire-except the political campaign question-were matters that addressed internal office policy and did not involve speech on a matter that would potentially concern the public. *See id.* at 148, 103 S.Ct. 1684.

In contrast, the Court in *Connick* determined that whether any assistant district attorney felt pressured to work in political campaigns did involve a matter of potential public concern because "there is a demonstrated interest in this country that government service should depend upon meritorious performance rather than political service." *Id.* at 149, 103 S.Ct. 1684. The Court further noted that such speech involved a matter of public concern because "official pressure upon employees to work for political candidates not of the worker's own choice constitutes a coercion of belief in violation of fundamental constitutional rights." *Id.* (citing *Branti v. Finkel,* 445 U.S. 507, 515–516, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Thus, the Court concluded that the issue "whether assistant district attorneys are pressured to work in political campaigns is a matter of interest to the

community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal." *Connick,* 461 U.S. at 149, 103 S.Ct. 1684.

■ Nunez spoke out to protect the rights of court employees pressured by Davis to work on his reelection campaign.[2] She did not act to further her own personal interests. *See Brewster v. Board of Educ.,* 149 F.3d 971, 980 (9th Cir.1998); *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983). In addition, her symbolic speech was relevant to the public's evaluation of the performance of a public official and the court system. *See Voigt,* 70 F.3d at 1560 (finding that court clerk's speech regarding possible hiring bias against out-of-state applicants touched on a matter of public concern because the public has an interest in knowing whether the court treats its job applicants fairly).

Davis argues that while the content of Nunez's symbolic speech may have addressed a matter of inherent public concern, the form and context of her speech did not make it sufficiently "public" to trigger First Amendment protection. Davis contends that Nunez's conduct arose out of a fit of spite, and did not communicate any message to her co-workers. In addition, Davis points out that Nunez did not express her concerns to the press or to any other public official.

■ But Davis's argument has no basis in law or fact. Nunez did communicate a message through her symbolic speech. One of the clerks attending the seminar testified she was aware of Davis's "policy" disallowing individuals who did not help in his campaign from attending training seminars, and that she was surprised she was allowed to attend. Marilyn Bell, a court employee, testified that everyone in the office knew of Davis' policy and that Nunez took a risk by sending the clerks to the seminar. Further, the fact that Nunez did not take her concerns to the press "does not vitiate the status of the statement

---

**2.** As Nunez testified, "I was tired of him pressuring everybody to work on the campaign.... I felt very protective of those clerks."

as addressing a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 386–87 n. 11, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). There is no legal requirement that a public employee's speech be made public in order to constitute speech on a matter of public concern. *See, e.g., Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 413–17, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (stating that First Amendment protection applies when a public employee arranges to communicate privately with employer rather than express his views publicly).

■ Davis also argues that Nunez's conduct is not protected speech but unprotected insubordination. As this court has held, "[i]ssuance of unauthorized orders by an employee, on behalf of the institution, is not protected speech." *Nelson v. Pima Community College*, 83 F.3d 1075, 1081 (9th Cir. 1996). But the cases Davis cites for this proposition are inapposite. In *Nelson*, this court considered whether a college administrator who disagreed with the college's affirmative action policy could receive First Amendment protection for actions she took to undermine the policy. The employee in that case had fundamental differences with her supervisor and official college policy. On numerous occasions, she ordered departments to halt hiring faculty so she could first review their affirmative action records, despite instructions from her superiors that she had no authority to make such demands. Nelson's disagreement with the college president and the college policy, and her refusal to perform her duties in accordance with their instructions, "threw the whole college into turmoil." *Id.* at 1080.

Another case cited by Davis, *Kotwica v. City of Tucson*, 801 F.2d 1182 (9th Cir.1986), involved a recreation supervisor in the city parks department who, against the direct orders of her supervisor, used an official press interview to contradict agency policy. This court found the employee did not have a First Amendment right to appropriate an official interview for her own purposes and to misrepresent the city's position, because the city also had a "vital speech interest" in the "accurate announcement of its own policy." *Id.* at 1184.

Unlike the employees in these cases, Nunez expressed herself as a public citizen about what she believed to be Davis's unjust practice concerning attendance at training seminars. Second, in contrast to *Nelson*, where the subordinate employee had broad, philosophical, and political differences with the president and the college employing her, Nunez did not disagree with Davis on general matters of court policy. Nunez only disagreed with Davis on one matter of public concern-his conditioning of attendance at training seminars on assistance in his reelection campaign. Her conduct should not be labeled as insubordination, but rather, symbolic speech on a matter of public concern.

**B. Nunez's conduct is constitutionally protected under the *Pickering* balancing test.**

■ Even where a public employee's speech implicates a genuine matter of public concern, a public employer may still be justified in firing the employee. In determining a public employee's rights to free speech, courts must strike a balance "between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The employer's interest outweighs the employee's interest in speaking on a matter of public concern if the employee's speech "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388, 107 S.Ct. 2891.

■ We conclude that Davis did not show that Nunez's speech impaired discipline or

harmony among co-workers. Davis testified that the absence of the clerks for two days to attend the training seminar disrupted office routine and exacerbated the court's backlog. Everyone else in the office testified that the backlog existed prior to Nunez's speech, and that the problem was not made worse as a result of her speech.

 Davis also argues that Nunez's speech impaired his "close working relationship" with Nunez. There is little merit to this claim. As this court has previously stated, "real, not imagined, disruption is required, and the 'close working relationship' exception cannot serve as a pretext for stifling legitimate speech or penalizing public employees for expressing unpopular views." *McKinley,* 705 F.2d at 1115. A public employer cannot claim disruption of a close personal relationship to cover up animus toward an employee's speech and a desire to silence the employee.

Furthermore, Davis did not show that Nunez's symbolic speech interfered with her ability to perform her job or the regular operation of the court. Davis testified that his relationship with Nunez became "quite strained" after the seminar incident and that the erosion of their relationship had an adverse impact on the court, but Bell testified that Nunez clearly remained loyal to Davis and there was no noticeable difference in Nunez's and Davis's relationship. In fact, Bell said she was "shocked" when Davis fired Nunez. As the verdict below suggests, the jury simply did not find Davis's testimony credible.

In addition, the verdict demonstrates that the jury rejected Davis's justifications for firing Nunez as pretextual. Nunez testified that prior to her termination, Davis told her that she had "failed him" for a number of reasons, including her failure to change stained ceiling tiles in his office, to clean up leaves outside the office, and to obtain his desired raise of $7,500 from the city council.

But the jury found that Nunez's speech-and not Davis' stated reasons-was the substantial motivating factor in Davis' decision to fire Nunez, and that she would not have been fired but for her speech.

In short, Davis has offered no credible evidence to tip the scales in his favor, and thus has failed to demonstrate a state interest that outweighs Nunez's First Amendment rights. Nunez's expressive conduct of allowing the court clerks to attend the training seminar is therefore constitutionally protected under the *Pickering* balancing test.

## II.

 Whether a public official is entitled to qualified immunity is a question of law. *See Hyland v. Wonder,* 117 F.3d 405, 409 (9th Cir.1997), *cert. denied,* ── U.S. ──, 118 S.Ct. 1166, 140 L.Ed.2d 177 (1998). Thus, the district court did not err in declining to submit this issue to the jury.

 A district court's decision on qualified immunity is reviewed de novo.[3] *See id.* To preclude a state official from receiving qualified immunity for dismissing a public employee in violation of her First Amendment rights, Nunez must show that her asserted right was clearly established and that her employer could not have reasonably believed that the dismissal was proper. *See Moran v. Washington,* 147 F.3d 839, 844-45 (9th Cir.1998). Nunez has met that burden. First, her speech clearly involved a matter of public concern. *See Connick,* 461 U.S. at 149, 103 S.Ct. 1684. In addition, on balance, Nunez's interest in exercising her First Amendment rights clearly outweighs Davis's asserted interest in maintaining an efficient workplace. The jury found Davis's testimony of office disruption not credible, and his other justifications for firing Nunez-her failure to change stained ceiling tiles in his office, to clean up leaves outside the office, and to obtain his desired raise of

---

**3.** Davis is not entitled to absolute immunity because the hiring and firing of court personnel is a non-judicial act for absolute immunity purposes.

*See Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

$7,500–pretextual. This being the case, there were no factors weighing in Davis's favor, and thus Nunez's right at issue was clearly established. Because the jury found that Nunez was fired for her speech and not for the other reasons Davis offered, Davis could not have reasonably believed that Nunez's dismissal was proper.

Finally, Davis argues that he is entitled to qualified immunity because he consulted the City Attorney, Richard Maurer, prior to firing Nunez. Davis argues that his reliance on Maurer's advice that he could legally terminate Nunez should bar imputation to him of "constructive knowledge concerning the law allegedly violated by his conduct." Reliance on the advice of counsel, however, is not dispositive on the issue whether Davis acted reasonably. *See Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir.1990). Here, Davis's argument is vitiated by Maurer's testimony that Nunez's speech was not among the reasons Davis gave him for his desire to dismiss Nunez. In light of this fact, it was not reasonable for Davis to rely on Maurer's advice that he could legally dismiss Nunez. Accordingly, the district court correctly ruled that Davis was not entitled to qualified immunity.

### III.

The district court erroneously submitted to the jury the question whether Nunez's speech implicated a matter of public concern and whether her conduct was speech. This is properly a question of law. *See Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. 1684. Error in instructing a civil jury does not require reversal if it is more likely than not harmless. *See Benigni v. City of Hemet*, 879 F.2d 473, 479 (9th Cir.1988). Here, the district court's error is harmless because, as the above discussion demonstrates, Nunez's speech involved a matter of public concern.

AFFIRMED.