**Norma and Hector CAVAZOS,**
**Plaintiffs,**

v.

**EDGEWOOD INDEPENDENT SCHOOL DISTRICT, Johnny Perez, Nora Perez, Ramiro Nava, Mary Lou Mendoza, Jesse R. Alcala, Marisol Martinez, George Garnica, Estefana C. Martinez, and Richard Bocanegra, Defendants.**

**No. Civ.A.SA–04–CA–0679XR.**

United States District Court, W.D. Texas, San Antonio Division.

Aug. 3, 2005.

952

Les Mendelsohn, Les Mendelsohn & Associates, P.C., San Antonio, TX, for Plaintiffs.

Robert A. Schulman, Ricardo R. Lopez, Feldman & Rogers, LLP, Mark A. Lindow, Lindow & Treat, L.L.P., San Antonio, TX, for Defendants.

### ORDER

RODRIGUEZ, District Judge.

This case concerns what can only be described as suspicious circumstances: A high school Principal with no previous reprimands is transferred in the middle of a school year. The allegations that she was insubordinate and that student performance was declining are highly suspect. The wife of the school board Vice–President loudly complains when her son is found with marijuana at school and the Principal recommends disciplinary action. Unfortunately, such suspicious circumstances do not equate to evidence suffi-cient to defeat a motion for summary judgment. Plaintiffs have filed this suit alleging Norma Cavazos was demoted from her position as Principal of John F. Kennedy High School in retaliation for exercising her First Amendment rights by reporting the criminal activity of the son of the Vice President of the Edgewood School Board, Johnny Perez, despite threats from Perez and his wife. In addition, Plaintiffs claim that the actions of the Perezes amounted to a civil conspiracy involving members of the School Board, and also that their actions were so extreme and outrageous as to constitute intentional infliction of emotional distress. Defendants move for summary judgment both on the basis of qualified immunity and on the merits. They argue that Norma Cavazos did not engage in speech regarding a matter of public concern, that there was no demotion, that any action taken against Norma Cavazos was not taken in retaliation for the exercise of free speech, and that there is no evidence to support Plaintiffs' claims.

### I. Factual and Procedural Background

Norma Cavazos was formerly the Principal of John F. Kennedy High School ("JFK"), located in the Edgewood Independent School District ("EISD"). Plaintiff began as Principal in August 2002. In February 2003, Nick Perez, the then-eighteen year old son of Edgewood Independent School Board Vice–President Johnny Perez, was apprehended on the JFK campus in possession of marijuana. Nick Perez was required to be removed to a disciplinary alternative education program. TEX. EDUC.CODE ANN. §§ 37.006, 37.008. According to Plaintiffs, Nick Perez was brought to the school office by the Vice–Principal, Angela Dominguez, who then had Mrs. Cavazos notified. Mrs. Cavazos arrived to find Nora Perez, the mother of

Nick, at the office yelling at Dominguez. Mrs. Cavazos testified in her deposition and in her declaration that Nora Perez continued yelling and threatening Mrs. Cavazos and Dominguez with the loss of their jobs, and intimated, at the least, that her son should not suffer any adverse consequences because her husband, Johnny Perez, was Vice–President of the School Board. Soon after the confrontation in Dominguez's office, Johnny Perez arrived at the school and Mrs. Cavazos held a meeting with both Johnny and Nora Perez in her office. Mrs. Cavazos states that she told the Perezes that she had to treat Nick the same as any other student and that, pursuant to district policy, he would be suspended for three days and would then have a disciplinary hearing and be sent to the disciplinary alternative education program, but that when he returned to JFK he would have a "clean slate." Mrs. Cavazos further states that, "In my office ... Johnny turned to Nora and told her that I had to do my job, then he turned and looked at me and said, 'and I will do, what I have to do.'" Mrs. Cavazos had Nick transported to the EISD Police Department where he was eventually released to his parents. Mrs. Cavazos recommended Nick's placement in the disciplinary alternative education program, where he was assigned for 30—45 days after a disciplinary hearing. The final decision as to discipline was made by George Dancause, the EISD Hearing Officer. No official action was taken by the Perezes as to this decision.

According to Mrs. Cavazos, Johnny Perez did not make any overt threats regarding her job status, or make any overt requests with regard to his son. Mrs. Cavazos states, however, that she felt "intimidated" by Johnny Perez's statement to her. Nora Perez, on the other hand, made numerous overt threats and requests regarding her son, according to Mrs. Cavazos. As alleged by Mrs. Cavazos, Nora Perez told Mrs. Cavazos that she would see to it that Mrs. Cavazos was fired if she did not refrain from acting against Nick regarding the marijuana incident, and again (in a subsequent meeting) told Mrs. Cavazos that she would make sure Mrs. Cavazos was removed from JFK if she did not fire a teacher who had made comments to Nick in class about the arrest. Mrs. Cavazos also alleges that Nora Perez stated at a December 2003 Board meeting that "if anyone hurt her son, she got revenge."[1] It was Mrs. Cavazos's impression that the attitudes of Johnny Perez and other members of the School Board negatively changed towards her after the Nick Perez incident.

In October 2003, Richard Bocanegra replaced Leo Gonzales as EISD Superintendent.[2] Prior to becoming Superintendent, Bocanegra was EISD Executive Director of Campus and Pupil Services. In this capacity Bocanegra had had some interaction with Mrs. Cavazos, as well as with both Johnny and Nora Perez. According to Bocanegra, he had no knowledge when he became Superintendent of the events surrounding Nick Perez, or of any altercations between Mrs. Cavazos and Johnny or Nora Perez, and the fact of the incident was never relayed to him. On January 28, 2004, Plaintiff was informed by Bocanegra that she was to be transferred, effective

---

1. Nora Perez disputes these accounts.

2. Mrs. Cavazos testified that in previous conversations with Johnny Perez prior to the incident with Nick Perez, she had always been given the impression that Bocanegra would never be named Superintendent.

Plaintiffs argue that this is circumstantial evidence that the Perezes maneuvered Bocanegra into the position of Superintendent with the purpose of retaliating against Mrs. Cavazos.

February 2, 2004, from the position of Principal of JFK to the position of "Principal" of the Competency Based High School ("CBHS"), an alternative high school for students who did not complete their high school education at their original school.[3] According to her employment contract and EISD Policy, Mrs. Cavazos was subject to reassignment by the Superintendent at any time. Bocanegra states in his affidavit that he had found Mrs. Cavazos to be "insubordinate" and difficult to manage in his previous dealings with her. He also found an inordinate amount of employee grievances filed by JFK teachers, as well as what he perceived as declining student performance at JFK.

Though the previous head of CBHS had been labeled "Director," Mrs. Cavazos's title was labeled "Principal." The move to CBHS did not result in any loss of pay, reduction in salary, or loss of benefits; however, according to Plaintiffs' expert, the pay scale for EISD indicates that the pay grade for high school principal is two pay grades higher than for the CBHS administrator.[4] There was never any explicit indication to Mrs. Cavazos that she might face termination or loss of pay. Mrs. Cavazos states that she spoke out against this transfer through the media. She apparently made statements to the effect that she believed she was being punished for following the rules with re-

gard to the arrest of a school board member's son, though there is no indication as to when exactly these statements were made. Mrs. Cavazos went to work at CBHS from February 2, 2004 until some point prior to end of the school year in May 2004, when she voluntarily resigned. CBHS was closed following the end of the school year in May 2004.

Plaintiffs filed suit on April 27, 2004 in Texas state court. Defendants removed on July 30, 2004 after Plaintiffs' Amended Petition alleged a federal cause of action. The official capacity Defendants (EISD and all other Defendants, except for Nora Perez, in their official capacities) have included a counterclaim pursuant to TEX. EDUC.CODE ANN. § 11.161 in this Court.[5] In their Second Amended Complaint, Plaintiffs allege causes of action under 42 U.S.C. § 1983 for retaliation in violation of Norma Cavazos's First Amendment rights, for conspiracy, for intentional infliction of emotional distress against Johnny and Nora Perez, and for loss of consortium on the part of Hector Cavazos. Defendants have filed a motion for summary judgment, both as to qualified immunity and as to the merits where qualified immunity does not apply. Defendants argue that there is no evidence to support Plaintiffs' contention that Mrs. Cavazos spoke on a matter of public concern, that no action

3. According to Mrs. Cavazos, CBHS had approximately 40—50 students per day, compared with more than 1500 full time students attending JFK. The head of CBHS was also titled as "director" previous to the transfer. Mrs. Cavazos states that her duties as Principal of JFK were much more in comparison to her duties at CBHS. Mrs. Cavazos also states it is highly unusual to have a principal transferred during the school year.

4. According to Plaintiffs' expert, pay grade PM9 includes high school principals, while pay grade PM7 includes the CBHS administrator. Both the midpoint and the maximum

of pay grade PM7 are contained in the salary range of PM9.

5. See Docket no. 21. Nora Perez has also asked for costs and attorney's fees pursuant to TEX. EDUC.CODE ANN. § 22.055. This claim is easily denied, as section 22.055 by its terms applies only to "a school district employee acting under color of employment." Nora Perez is not an EISD employee. There is no extension of this right to "School District Volunteers," unlike the explicit extension of *immunity* to volunteers such as Nora Perez in section § 22.053.

was taken in retaliation for any protected speech, and that no evidence support Plaintiffs' contentions as to conspiracy or intentional infliction of emotional distress.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir.1995). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir.1991). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In making this determination, the Court will review the evidence in the record and disregard the evidence favorable to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In order for a court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the rec-

ord, viewed in this light, could not lead a rational trier of fact to find for the party opposing the motion, summary judgment is proper.

## III. Analysis

The Court has denied Plaintiffs' Rule 56(f) motion for continuance and therefore relies on the evidence presented in Defendants' Motion for Summary Judgment and Plaintiffs' Response.

### A. First Amendment Retaliation

At first blush, it appears that Defendants concede the fact that Norma Cavazos engaged in "speech" within the legal definition of that term. *See* Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment at 4 ("Plaintiffs' inexplicably argue that Norma Cavazos engaged in 'speech' despite the fact that Defendants never challenged this issue in their summary judgment Motion."). However, Defendants object to what they view as an expansion of Plaintiffs' allegations as to what type of "speech" Mrs. Cavazos engaged. According to Plaintiffs' allegations, the "speech" alleged to Mrs. Cavazos encompassed "requiring Nick Perez to attend A.E.P. for committing a violation of [TEX. EDUC.CODE. ANN. § 37.006][,] ... refus[ing] to alter, destroy or conceal the record of the apprehension of Nick Perez[,] and by refusing to impair its availability as evidence in an investigation or official proceeding." Second Amended Complaint at ¶ 15. In Plaintiffs' Response to Defendants' summary judgment motion, Plaintiffs put forward three types of "speech" in which they argue Mrs. Cavazos engaged: (1) the choice to adhere to the law by notifying the police regarding Nick Perez, and by notifying her superiors regarding Nick Perez's apprehension, despite threats from Johnny and Nora Perez; (2) the refusal to follow demands of Johnny and Nora Perez to

ignore the law and to give preferential treatment to their son; and (3) the communication of the apprehension of Nick Perez to her superiors.[6] Each of these types of speech is consistent with Plaintiffs' allegations in their Second Amended Complaint. The Court finds that Plaintiffs allege Mrs. Cavazos engaged in "speech" by forwarding information regarding the apprehension of Nick Perez to the police and to her superiors, and by refusing any demands that Nick Perez be treated differently. Though it was likely unwise to concede that Plaintiffs have sufficiently alleged Mrs. Cavazos engaged in "speech," as the Court has some lingering doubts, Defendants' stipulation on this point is accepted and the Court will proceed accordingly.

 Defendants argue that they are entitled to qualified immunity on the § 1983 claim.[7] The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is examined in a two-step inquiry. *See Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). First, the Court must decide whether Plaintiffs' allegations, if true, establish a violation of a clearly established right. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir.1998) (*en banc*). Second, if Plaintiffs have alleged such a violation, the Court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident. *Id.* Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Id.* Plaintiffs argue that their allegations establish a violation of a clearly established right—the right of Norma Cavazos to exercise her First Amendment rights, and to be free from retaliation for such exercise. Plaintiffs argue that Mrs. Cavazos engaged in protected speech on a matter of public concern when she reported the apprehension of Nick Perez to her superiors and to the police, and when she refused the threats and demands of Johnny and

---

6. Though Defendants make much of this third type of speech alleged—titled "Communication of Wrongdoing to Higher Authorities"—they are mistaken as to what Plaintiffs actually argue here. Plaintiffs argue that Mrs. Cavazos engaged in speech by communicating information regarding Nick Perez's apprehension to her superiors, *not*, as Defendants erroneously complain, by communicating the allegations relating to any threats by Johnny or Nora Perez to her superiors. Plaintiffs have not made this argument, nor made this allegation.

7. Plaintiffs have included Nora Perez in the claim under § 1983 as a "School District Volunteer" (though they label the title as "Certified Parent Volunteer"). It is highly unlikely that Nora Perez would be held to be a state actor under § 1983 given Plaintiffs' allegations against her specifically. Nora Perez was not in any way volunteering at the school at the time in question. She was acting solely in her capacity of parent. However, even if Nora Perez could be considered a state actor, either through her actions or through her classification as a "School District Volunteer," she would still be entitled to the same defenses as the school district employees who are defendants in this case. *See* TEX. EDUC.CODE ANN. § 22.053(a) ("A volunteer who is serving as a direct service volunteer of a school district is immune from civil liability to the same extent as a professional employee of a school district under Section 22.0511."). As a favorable finding towards the other defendants on the issue of qualified immunity would also shield Nora Perez from liability under § 1983, the Court need not decide at this time whether Nora Perez would qualify as a state actor under § 1983.

Nora Perez to give preferential treatment to their son.

■ For Plaintiffs to successfully allege a claim of First Amendment retaliation, their claim must show: (1) an adverse employment action; (2) speech involving a matter of public concern; (3) that the speech motivated Defendants' actions; and (4) that the interest in commenting on a matter of public concern outweighs Defendants' interest in promoting efficiency. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.1999) (citations omitted).

*1. Adverse Employment Action*

■ Courts should be extremely hesitant "to invade and take over" in the area of education; a federal court is not the appropriate forum in which to seek redress over "faculty disputes concerning teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other ... matters." *Dorsett v. Bd. of Trustees for State Colleges & Univs.*, 940 F.2d 121, 123–24 (5th Cir.1991) (citing *Connick v. Myers*, 461 U.S. 138, 138–39, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). However, it is clear that reprimands and demotions in the educational field constitute adverse employment actions. *Harris*, 168 F.3d at 221. Plaintiffs claim that the transfer of Mrs. Cavazos from JFK to CBHS was a "demotion." Defendants insist that this transfer was simply a lateral transfer, as authorized by Mrs. Cavazos's contract and EISD policy. "[F]or the pur-

poses of a § 1983 retaliation claim, an adverse employment action can include a transfer, because it may serve as a demotion." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir.1999) (citations omitted).[8] "To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* (citing *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir.1996); *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992)). Plaintiffs contend that the transfer of Mrs. Cavazos to CBHS resulted in such an objectively worse position, compared to her position as Principal of JFK. According to Plaintiffs' expert, Noe Sauceda, Ph.D., the highest pay grade available to Mrs. Cavazos as Principal of CBHS was two pay grades below the highest available to the Principal of JFK. In addition, as Principal of CBHS, Mrs. Cavazos handled far fewer students, and supervised far fewer employees, than as Principal of JFK. Defendants have offered no rebuttal to these points, other than to point out that Mrs. Cavazos suffered no reduction in salary and retained the title of "Principal." From an objective standpoint, a reasonable jury could determine that Mrs. Cavazos's new position was less prestigious or provided less room for advancement, and therefore constituted a demotion. Therefore Plaintiffs have provided evidence sufficient at the summary judgment stage to

**8.** As illustrated by the discussion in *Sharp*, Defendants' reliance on *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir.1997), which limits application of the term "adverse employment action" to "ultimate employment decisions" in Title VII cases, is misplaced. *Sharp* indicated that there are "potential differences between [T]itle VII's and § 1983's definitions of 'adverse employment action.'"

*Sharp v. City of Houston*, 164 F.3d 923, 933 n. 21 (5th Cir.1999). Section 1983's definition likely encompasses a broader range of actions than Title VII's. *Id.* at 933 (including a transfer to an "objectively worse" position among those actions constituting an adverse employment action under § 1983 and somewhat distinguishing *Mattern* ).

support their contention that Mrs. Cavazos suffered an adverse employment action.[9]

## 2. Public Concern

■■■ As explained above, Plaintiffs contend that Mrs. Cavazos engaged in speech by reporting the apprehension of Nick Perez to her superiors and to the police, and by refusing demands to give preferential treatment to Nick Perez. Whether such speech involved a matter of public concern depends upon "the content, form, and context of a given statement [or expressive conduct], as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A public employee's speech or expressive conduct involves a matter of public concern when it "can be fairly considered as relating to a matter of political, social, or other concern to the community." *Id.* at 146, 103 S.Ct. 1684.

■■■ Plaintiffs' primary argument as to whether Mrs. Cavazos engaged in speech involving a matter of public concern focuses solely on her statements to the media *after* her transfer to CBHS. Plaintiffs' Response states, "whether a school principal is pressured to allow a school Board Trustee's adult son to 'break the law' and possess controlled substances on a high school campus and is removed from her position after she decided to follow the law is a matter of interest to the community of parents and taxpayers." Plaintiffs argue that "disclosure of crime is a matter of public concern," and that when Mrs. Cavazos spoke out after her transfer to CBHS she was attempting to speak out against alleged corruption in EISD, i.e., that Johnny and Nora Perez had requested special treatment for their son. This "speech" is not, however the form of speech for which Plaintiffs contend Mrs. Cavazos was retaliated against. That particular speech is limited to the notification to the police and to her superiors of Nick Perez's apprehension, and the refusal to give special treatment to Nick Perez in the face of alleged threats from Johnny and Nora Perez. It would be impossible for Plaintiffs to now claim that Mrs. Cavazos's statements to the media made after her alleged demotion were the reason for her transfer, as the transfer occurred before those statements

**9.** There is some indication that Plaintiffs have also attempted to argue that certain actions Mrs. Cavazos perceived to have been taken against her, such as EISD police following her, and her phone being monitored, qualify as an adverse employment action. They are not. *See Colson v. Grohman*, 174 F.3d 498, 511–12 (5th Cir.1999) (acknowledging that criticism, the attempt to start an investigation, and false accusations are all harms that, while they may chill speech, are not actionable under the Fifth Circuit's First Amendment retaliation jurisprudence). Nor do any of Plaintiffs' allegations support the claim that Mrs. Cavazos suffered a constructive discharge. "The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge...." *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.

1980). Constructive discharge requires a greater degree of harassment than even that required by a hostile environment claim. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998). Plaintiffs' complaints regarding constructive discharge amount only to "badgering, harassment and humiliation." Plaintiffs' Response at 29. Though these are buzz words used in examining a constructive discharge claim, Plaintiffs' evidence does not support a claim of constructive discharge.

The Court's affirmative finding as to adverse employment action is limited to the transfer to CBHS. This is an important distinction, as there was no adverse employment action that occurred subsequent to Mrs. Cavazos's statements to the media regarding her allegations concerning why she had been transferred, and therefore there was *no* First Amendment retaliation because of this particular conduct.

were made, but this is their primary argument as to public concern. Therefore, any reliance upon statements to the media regarding the Nick Perez incident or any threats made by Johnny or Nora Perez have no bearing on whether Mrs. Cavazos's "speech" involved a matter of public concern.[10]

Plaintiffs also argue that Mrs. Cavazos's actions in reporting the apprehension of Nick Perez to the police and to her superiors, consistent with her responsibilities as JFK Principal, was speech/expressive conduct involving a matter of public concern. Plaintiffs argue that the choice to stand up to official corruption is itself speech involving a matter of public concern. When examining a First Amendment claim, the content, form, and context of the speech determines whether it is of public concern. *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. "The courts will not interfere with personnel decisions 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.'" *Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir.1988) (quoting *Connick*, 461 U.S. at 147, 103 S.Ct. 1684). Public employees may speak in their role as employees, while still speaking on matters of public concern, in only limited instances: those involving the report of corruption or wrongdoing to higher authorities. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1050–51 (5th Cir.1996) (citations omitted). Even in the face of an improper and illegal request for preferential treatment from a member of the school board (assuming Plaintiffs' allegations), the act of Mrs. Cavazos simply to forward the information regarding Nick Perez's apprehension to the police and to her superiors was not speech involving a matter of public concern. It was merely the duties of Mrs. Cavazos's position as Principal. In this act, Mrs. Cavazos was acting solely in her role as a public employee. The courts do not focus on the inherent interest or importance of the matters discussed by the employee, but decide whether the speech at issue was made primarily in the employee's role as citizen or primarily in her role as employee. *Stewart v. Parish of Jefferson*, 951 F.2d 681 (5th Cir.1992). That Mrs. Cavazos was reporting Nick Perez's wrongdoing to authorities is not the form of "wrongdoing" that has been identified as transforming a public employee's speech to a public concern. There is no allegation that Mrs. Cavazos was a whistleblower or attempted to report the purported actions of Johnny and Nora Perez to the public or to higher authorities (prior to her transfer).[11] *Id.* at 1051. Mrs. Cava-

**10.** Unlike the cases to which Plaintiffs cite, this is not a situation involving a government employee who is fired or demoted for disclosing corruption to her superiors. *See Schultea v. Wood*, 27 F.3d 1112, 1114, 1120 (5th Cir. 1994) (discussing former police chief's claim where he had proceeded with investigations into public corruption, and had been demoted to assistant police chief in retaliation); *Brown v. Texas A & M Univ.*, 804 F.2d 327, 337 (5th Cir.1986) ("[A]s a diligent public servant, ... [the plaintiff] repeatedly reported the alleged corruption, or potential for corruption, to his superiors ....") (both cases cited by Plaintiffs in support of their claim). This is a case where it is alleged that Mrs. Cavazos nobly stood her ground against official corruption in the face of retaliation. Plaintiffs' allegations entail that Mrs. Cavazos defied such corruption and retaliation, that she was demoted because of this, and that she then spoke out to the public as to the actions she considered official corruption.

**11.** Though Plaintiffs have not alleged any instance prior to her transfer in which Mrs. Cavazos reported the actions of Johnny and Nora Perez to any higher authority, and Plaintiffs have not pointed to any evidence that this was done, there does exist one colloquy in Mrs. Cavazos's deposition regarding this point:

zos's actions in reporting the incident involving Nick Perez to the police and to her supervisors was therefore an action mandated by law, and were made solely in her role as employee.[12]

■ Nor does Plaintiffs' allegations that Mrs. Cavazos refused to give preferential treatment to Nick Perez, even after requests and threats from Johnny and Nora Perez, qualify as speech concerning a matter of public concern. To possess sufficient communicative elements to constitute speech concerning a matter of public concern, conduct must take place with an intent to convey a particularized message with a great likelihood that the message would be understood by those who viewed it. *Cabrol v. Town of Youngsville,*

Q: [D]id you ever report [Johnny or Nora Perez] to anybody, report their conduct?
A: To Ms. Hartmann [Mrs. Cavazos's supervisor, EISD Executive Director of Secondary Schools]
Q: Um-hum. And did you, was that a formal complaint or were you just kind of relaying to her what happened?
A: Just relaying to her.
Q: But you never made any formal complaint?
A: No.
Q: Did you inform other board members about it?
A: No.
Q: Did you ever have any discussions with any board members related to the incident involving Nick Perez or any of the conduct that you're alleging Johnny and Nora engaged in towards you?
A: No.

Deposition of Norma Cavazos at 159:1–18. This is the only evidence presented that Mrs. Cavazos ever attempted to report the alleged actions of Johnny and Nora Perez to her superiors prior to her transfer to CBHS. There is no evidence, however, that this information was ever relayed to the Superintendent (Dr. Gonzalez at the time) or any EISD School Board member. Only the Board, and through them the Superintendent, could act to retaliate against Mrs. Cavazos by transferring her. Plaintiffs have not presented any evidence that this isolated instance of Mrs.

106 F.3d 101, 109 (5th Cir.1997) (citing *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989)). In considering such conduct, the activity must be examined, combined with the factual context and environment in which it was undertaken. *Id.* (citations omitted). "In order for a message to be delivered by conduct, it must, in context, be reasonably apprehended by viewers." *Id.* (citing *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974)). If there is no likelihood that viewers would perceive a message, there is no expressive conduct. *Id.* (citing *Steirer v. Bethlehem Area Sch. Dist.,* 987 F.2d 989, 995 (3rd Cir.1993)). As to Mrs. Cavazos's conduct, there was no context that would likely

Cavazos relaying this information to Karen Hartmann was in any way relevant to her transfer. (Nor has evidence been presented from Hartmann as to whether this conversation ever took place. Hartmann was asked the question, "did you hear anyone say to you, whether it was Nora or Johnny Perez or another person, saying that the Perezes had said something that was a direct complaint against Norma, or a threat against Norma?" Her answer was "I don't recollect anyone telling me anything directly." Deposition of Karen Hartmann at 87:17–25).

**12.** In fact, Mrs. Cavazos was forbidden by law from revealing to the public the fact of Nick Perez's arrest. FAMILY EDUCATIONAL RIGHT TO PRIVACY ACT, 20 U.S.C. § 1415g (forbidding the release of students' educational records, including disciplinary records, from public disclosure by school official). This largely negates Plaintiffs' arguments that the public would have an interest in whether Mrs. Cavazos followed the law in reporting Nick Perez, and that the public has an interest in the presence of drugs on campuses. The public of course has a strong interest in the presence of drugs on school campus. However, the Court is not persuaded that this interest in and of itself is sufficient to turn the single act of Mrs. Cavazos reporting the apprehension of a student to the police and to her superiors into constitutionally-protected speech involving a matter of public concern.

allow a viewer to understand that Mrs. Cavazos was taking a stand against public corruption. Mrs. Cavazos was simply doing her job in reporting a student apprehended on campus with marijuana.

The Ninth Circuit has stated that a public employee may, through expressive conduct, convey an implicit message of disapproval of the illegality of activity by refusing to facilitate or participate in it. *Thomas v. City of Beaverton,* 379 F.3d 802, 809 (9th Cir.2004) (holding that the plaintiff's decision to promote another employee was an implicit repudiation of the discrimination that the employee had been subjected to); *Nunez v. Davis,* 169 F.3d 1222, 1227–28 (9th Cir.1999) (holding that an employee's refusal to limit attendees at training seminars to those court employees who had worked on her supervisor's reelection campaign was expressive conduct on a matter of public concern). These cases, however, involved situations in which the illegality that the employee disapproved of was already in the open and public.

In *Thomas,* the plaintiff had refused to pass over an employee for promotion after being told to do so. That employee had previously won a retaliation suit as to the exact promotion at issue. When it became apparent that the employee was the most qualified applicant for the position when the time for promotion came around again, the plaintiff was told to again pass the employee over. The plaintiff responded that "she could not justify not promoting" the employee. *Thomas,* 379 F.3d at 806. After the plaintiff continued, for a period of a few months, to assert that the employee should be promoted, the plaintiff was placed on extended probation and then fired for complaining about this situation. *Id.* at 806. The Ninth Circuit reversed a summary judgment in favor of the public employer on the plaintiff's First Amendment retaliation claim. Noting that "[u]nlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern," *id.* at 809, the Ninth Circuit held that when the plaintiff had stated that she could not justify passing over the employee for promotion, she was implicitly stating that any reason given for not granting the promotion was unjustified, and therefore discriminatory. *Id.* 810. The court held that this implicit message could reasonably be found to convey disapproval of the unlawful retaliation. *Id.*

In *Nunez,* the plaintiff was a court administrator who was instructed by a municipal judge to limit attendees at a training seminar to only those employees who had worked on the judge's reelection campaign. *Nunez,* 169 F.3d at 1226. The Ninth Circuit noted that "[n]on-verbal conduct implicates the First Amendment when it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Id.* (quoting *Texas v. Johnson,* 491 U.S. at 404, 109 S.Ct. 2533). The Court also noted that the plaintiff in *Nunez* "testified that she intended by her conduct to convey a message to the court clerks and co-workers that the judge should not condition court clerks's [*sic*] benefits on working in his reelection campaign. The court clerks, as well as co-employees, testified that they understood that message" and that they knew of the judge's policy and the plaintiff's defiance of it. *Id.* at 1226–27. The Ninth Circuit held that by engaging in this expressive conduct, the plaintiff had intended to protect the rights of court employees pressured to work on the judge's reelection campaign, and not to further her own interests. *Id.* at 1227. "In addition, her symbolic speech was relevant to the public's evaluation of the performance of a public official and the court system." *Id.* (citation omitted).

Though these cases are somewhat persuasive, the Court is not convinced that simply standing up to an alleged act of official corruption on its own, with no other expressive conduct, speech, or disclosure, is sufficient to constitute speech regarding a matter of public concern. The Fifth Circuit has focused primarily on *disclosures* of wrongdoing, rather than the broad category of "implicit message." *See, e.g., Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir.2001) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials ... concerns matter of public import.") (quotation omitted); *Wallace,* 80 F.3d at 1050–51 (limiting public employees' ability to speak on matters of public concern while acting in their employment to the report of corruption or wrongdoing to higher authorities); *Brawner v. City of Richardson,* 855 F.2d 187, 191–92 (5th Cir. 1988) ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection ...."); *cf. Cabrol,* 106 F.3d at 109 ("[The plaintiff's alleged expressive conduct] did not occur in the context of, for example, any accompanying conduct or speech or symbol...."). This would seem to be the proper focus.

Because Mrs. Cavazos's alleged "speech" amounts only to lawfully-mandated actions in which she had no choice but to act as she did, these actions did not involve matters of public concern. Neither Plaintiffs' allegations nor the evidence supports a finding in favor of public concern. Mrs. Cavazos's actions did not amount to an attempt " 'to bring to light actual or potential wrongdoing or breach of trust.' " *Brown v. Texas A & M Univ.,* 804 F.2d 327, 337 (5th Cir.1986) (quoting *Connick,*

461 U.S. at 148, 103 S.Ct. 1684). Nor have Plaintiffs even alleged, in their Second Amended Complaint, that Mrs. Cavazos attempted to report or disclose any act of public corruption, i.e., Johnny Perez's purported threats, prior to her transfer to CBHS. Plaintiffs have therefore failed to establish a genuine issue of material fact as to speech on a matter of public concern.

### 3. Qualified Immunity

Plaintiffs' allegation, even if assumed to be true, do not establish a violation of a clearly established right against Defendants. Plaintiffs' allegations do not suffice to allege a claim for First Amendment retaliation, as Mrs. Cavazos did not engage in speech involving a matter of public concern. Though it certainly seems that Mrs. Cavazos was transferred for reasons that are less than genuine, Plaintiffs have not provided evidence supporting their claim that it was because of speech involving a matter of public concern. Even assuming Mrs. Cavazos performed her duties as required in the face of pressure, requests, or threats from a member (or his wife) of the EISD School Board, that allegation is not sufficient to allege speech involving a matter of public concern. Defendants are therefore entitled to qualified immunity. Summary judgment is granted in favor of Defendants Johnny Perez, Nora Perez,[13] Ramiro Nava, Mary Lou Mendoza, Jesse Alcala, Marisol Martinez, George Garnica, Estefana Martinez, and Richard Bocanegra in their individual capacities on Plaintiffs' First Cause of Action for First Amendment retaliation pursuant to § 1983.

### 4. Official Claim Against EISD

Plaintiffs' claim against EISD itself for First Amendment retaliation like-

---

**13.** As noted above, in the unlikely event that Plaintiffs' claims for First Amendment retaliation can be read to allege a claim against Nora Perez as a state actor, qualified immunity is also available to Nora Perez on Plaintiffs' First Cause of Action.

wise fails due to the lack of evidence indicating speech involving a matter of public concern. "[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citing *Monell v. New York Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). A governmental body "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 693, 98 S.Ct. 2018. State law "will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 125, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The burden is on Plaintiffs to establish the identity of the final policymaker on the part of the local governmental unit. *See Bass v. Parkwood Hosp.,* 180 F.3d 234, 244 (5th Cir.1999). An official may be a policymaker in a particular area or on a particular issue. *Brady v. Fort Bend County,* 145 F.3d 691, 699 (5th Cir.1998). The EISD Board of Trustees is the policymaker for EISD. *See Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220 (5th Cir.1999). If a school board approves a superintendent's decision to transfer an outspoken teacher, knowing of the superintendent's retaliatory motive for doing so, the school district itself may be liable; but if the school board lacks such awareness of the basis for the decision, it has not ratified the illegality and the district itself is not liable. *See Beattie v. Madison County Sch. Dist.,* 254 F.3d 595, 603–05 (5th Cir.2001).

As the evidence does not support Plaintiffs' allegations that Mrs. Cavazos spoke on a matter of public concern either by forwarding information to her superiors and to the police regarding Nick Perez's apprehension, or by refusing to give preferential treatment to Nick Perez in the face of alleged threats from the Vice–President of the School Board, there could have been no retaliatory motive for the Board to approve with regard to the transfer of Mrs. Cavazos to CBHS. Nor is there is evidence that Richard Bocanegra ever knew of the conduct alleged to Johnny and Nora Perez, or even that Richard Bocanegra knew about the incident regarding Nick Perez.[14] Even assuming Bocanegra, as Superintendent of EISD, could be said to have been delegated policymaking authority on administrative assignments, there is no evidence to ascribe a retaliatory motive to his decision to transfer Mrs. Cavazos to CBHS nearly one full year after the Nick Perez incident occurred. Plaintiffs must present direct or circumstantial evidence showing that the supervisor who made the adverse employment decision had knowledge of the protected speech. *See, e.g., Beattie v. Madison County Sch. Dist.,* 254 F.3d 595, 604 (5th Cir.2001) ("Without a showing that the board had actual knowledge of the alleged improper basis of Jones's and Acton's recommendation, the board cannot be held liable for the alleged retaliation."). As the evidence does not support finding any re-

---

14. In fact, Bocanegra testified in his declaration that he had no knowledge of this event at the time he transferred Mrs. Cavazos to CBHS and that the transfer was based on deficiencies he perceived in her performance.

taliatory conduct on the part of a policy-maker of EISD, summary judgment is granted in favor of EISD, and in favor of Johnny Perez, Nora Perez,[15] Ramiro Nava, Mary Lou Mendoza, Jesse Alcala, Marisol Martinez, George Garnica, Estefana Martinez, and Richard Bocanegra in their official capacities.

## B. Conspiracy

■■■ Plaintiffs' Second Cause of Action purports to allege that a civil conspiracy took place against Mrs. Cavazos. Plaintiffs first argue that, pursuant to 42 U.S.C. § 1985, "two or more Defendants ... conspired to prevent by intimidation and/or threat, either directly or indirectly, [Mrs. Cavazos] from discharging the duties of her office as principal of [JFK] by retaliating against her for her exercise of her protected free speech rights." Defendants correctly point out that § 1985(1) only "applies in cases of interference with federal officials in the performance of their duties." *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998). It "is not applicable to state officials." *Id.* Plaintiffs have abandoned this particular cause of action. Therefore summary judgment is granted in favor of Defendants on that part of Plaintiffs' Second Cause of Action alleging civil conspiracy under § 1985.

■■■ Plaintiffs argue that while the claim under § 1985 is not valid, they have properly alleged a claim for civil conspiracy under Texas law. Defendants have filed a Reply to Plaintiffs' Response, but have not addressed Plaintiffs' argument that the evidence supports such a claim. Under Texas law, Plaintiffs must prove

five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). Plaintiffs argue that after Mrs. Cavazos refused to give preferential treatment to Nick Perez, Johnny and Nora Perez entered into a meeting of the mind with other EISD School Board members and with Richard Bocanegra to have Mrs. Cavazos transferred. Plaintiffs do not offer any evidence other than the speculation of Mrs. Cavazos and one former Board member, Jesus Cavillo, that this occurred. Plaintiffs are not permitted to pile inference upon inference, nor to rely solely upon conclusory allegations to support their claims. There is no evidence supporting a claim for civil conspiracy, as there is no evidence that any person intended to act against Mrs. Cavazos. That Nora Perez regularly attended EISD Board meetings, spoke about Board business, or bragged about her husband's position is not evidence that Nora Perez intended to "get" Mrs. Cavazos for turning Nick Perez over to the police. Summary judgment is granted in favor of Defendants on that part of Plaintiffs' Second Cause of Action that alleges a civil conspiracy under Texas law.

## C. Intentional Infliction of Emotional Distress

■■■ Plaintiffs' Third Cause of Action is against Johnny and Nora Perez for

15. Plaintiffs have not differentiated between any of the defendants in their official and individual capacities. Though only policymakers may officially act in § 1983 terms, and Nora Perez cannot in anyway be considered an EISD policymaker, Plaintiffs label her a "state actor" through her status as "School District Volunteer." Insofar as Plaintiffs § 1983 claim against EISD can be read as applying to Nora Perez, and even though she has no "official capacity" with regard to EISD, summary judgment should be granted in favor of Nora Perez on this claim.

intentional infliction of emotional distress. To recover damages for intentional infliction of emotional distress, Plaintiffs must establish that (1) Defendants acted intentionally or recklessly; (2) Defendants' conduct was extreme and outrageous; (3) Defendants' actions caused emotional distress; and (4) the resulting emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 621. Liability does not extend to mere insults, indignities, threats, annoyances, petty impressions or other trivialities. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex.1999). The entirety of Plaintiffs' allegations as to the conduct of Johnny Perez is that he threatened Mrs. Cavazos in her office on the day of Nick Perez's apprehension when he stated "I need to do what I need to do." This falls in the "veiled threat" category and is not sufficient to support a cause of action for intentional infliction of emotional distress.

◼ Plaintiffs' allegations against Nora Perez are more extensive, but equally unavailing. Plaintiffs allege that Nora Perez threatened Mrs. Cavazos's job at their meeting on the day of Nick Perez's apprehension, and that subsequent to that Nora Perez would visit the school regularly and make threats to faculty and staff as to having Mrs. Cavazos fired. Putting aside the fact that the only evidence of this is Mrs. Cavazos's second and third-hand accounts, these threats are not so extreme and outrageous as to support a claim for intentional infliction of emotional distress. A course of harassing conduct may support liability for intentional infliction of emotional distress. *Bruce*, 998 S.W.2d at 615.

When ongoing harassment is alleged, the offensive conduct is evaluated as a whole. *Id.* Cases upholding application of awards of intentional infliction of emotional distress have generally required conduct that is best described as "flagrant or heinous." *Haynes & Boone, L.L.P. v. Chason*, 81 S.W.3d 307, 309 (Tex.App.—Tyler 2002, pet. denied) (citing *Morgan v. Anthony*, 27 S.W.3d 928, 931 (Tex.2000) (reversing summary judgment where defendant's sexually suggestive comments while attempting to offer assistance to plaintiff whose car had died and continued pursuit of her after she declined such assistance); *Bruce*, 998 S.W.2d at 612–13 (noting that supervisor engaged in ongoing acts of harassment, intimidation, humiliation, daily use of vulgarities, and obscene behavior); *Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 531–33 (Tex.App.—Houston [1st Dist.] 2000, pet. denied) (noting that over a three-month period, employer repeatedly threatened to fire employee if she did not succumb to sexual advances); *Gonzales v. Willis*, 995 S.W.2d 729, 736 (Tex. App.—San Antonio 1999, no pet.) (describing defendant's conduct including sexually explicit conversations and sexual advances in spite of plaintiff's protests, suggesting he could help her get a job in return for sexual favors, and encouraging co-workers to make indecent propositions)). Nora Perez's alleged actions do not rise to the level of flagrant or heinous, nor are they likely to make an average member of the community exclaim "Outrageous!" *See Gearhart v. Eye Care Ctrs. of Am., Inc.*, 888 F.Supp. 814, 819 (S.D.Tex.1995). Summary judgment is therefore granted in favor of both Johnny and Nora Perez.

### D. Claim of Hector Cavazos

◼ The entirety of Hector Cavazos's claim is loss of consortium. A loss of consortium claim is derivative. *Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638,

640 (Tex.1996). Loss of consortium damages are recoverable only when the non-derivative claim results in physical injury. *Id.* As Norma Cavazos has no remaining claim pending in this action, Hector Cavazos's claim is barred. Summary judgment is therefore granted in favor of Defendants on Hector Cavazos's loss of consortium claim.

## E. Counterclaims

 Defendants other than Nora Perez have filed a counterclaim under Tex. Educ.Code Ann. § 11.161 for costs and reasonable attorneys' fees.[16] Section 11.161 grants discretion to the Court to award costs and attorneys' fees "to an independent school district or an officer of an independent school district acting under color of office" where the Court finds that a plaintiff's suit "(1) is frivolous, unreasonable, and without foundation; and (2) the suit is dismissed or judgment is entered for the defendant." Clearly the second requirement has been met; summary judgment is to be granted in favor of Defendants. However, the Court does not find that Plaintiffs' suit was frivolous, unreasonable, and without foundation. Defendants conceded that Mrs. Cavazos engaged in speech. And though the Court found that such speech was not involving a matter of public concern, it was clearly not unreasonable to argue to the contrary. United States Supreme Court and Fifth Circuit precedent demonstrate that official corruption is one of the most important forms of speech that a claim for First Amendment retaliation is meant to protect against. A whistleblower is protected against retaliation. It was neither frivolous nor unreasonable for Plaintiffs to attempt to place Mrs. Cavazos's conduct within this context. That argument was simply not fruitful. Therefore, the Court *sua sponte* grants summary judgment in favor of Plaintiffs on Defendants' counterclaim.

## IV. Conclusion

Plaintiffs claim that Norma Cavazos was transferred to the position of Principal of the Competency Based High School, a secondary school located in the Edgewood Independent School District servicing approximately 50 students, from the position of Principal of John F. Kennedy High School, another secondary school in EISD that services nearly 1500 students, in retaliation for the exercise of her rights of free speech. Plaintiffs claim Norma Cavazos suffered an adverse employment action as a result of this transfer. Plaintiffs also claim that Norma Cavazos spoke on matters of public concern by reporting to the police and her superiors the apprehension of a student, Nick Perez, the eighteen year old son of the EISD School Board Vice-President, for possession of marijuana, and by reporting this action in defiance of requests and threats to do the contrary by Nick's parents, Johnny and Nora Perez. Though the Court finds that the transfer to CBHS placed Mrs. Cavazos in an objectively worse position, and therefore constituted an adverse employment action, the Court finds that there is no evidence to support Plaintiffs' claims that Mrs. Cavazos spoke on matters of public concern. Mrs. Cavazos's actions were required of her by her position as Principal of JFK. Simply standing up to alleged official corruption is not sufficient to constitute speech regarding a matter of public concern. There is no allegation that Mrs. Cavazos was a whistleblower or attempted

---

**16.** Defendants have failed to address this counterclaim in their motion for summary judgment. Given the outcome of the summary judgment motion, however, it is worthwhile to address this claim at this time.

to report official corruption to higher authorities. Plaintiffs' allegations and evidence are insufficient to establish a claim for First Amendment retaliation. As such, the individual Defendants are entitled to qualified immunity, and all Defendants are entitled to summary judgment in their favor on Plaintiffs' First Amendment retaliation claim. Likewise, there is no evidence to support Plaintiffs' claims for civil conspiracy, intentional infliction of emotional distress, or loss of consortium.

Defendants' Motion for Summary Judgment is GRANTED (docket no. 37). Summary judgment is also GRANTED *sua sponte* in favor of Plaintiffs on all Defendants' counterclaims. Costs are awarded to Defendants. Attorneys' fees are to be borne by the party incurring the same. The Clerk of the Court is directed to enter judgment in favor of Defendants on Plaintiffs' claims, and in favor of Plaintiffs on Defendants' counterclaims.